IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

RUDY GARCIA,                              )
                                          )
                    Plaintiff,            )          Case No. 02-1221-KI
                                          )
        vs.                               )          OPINION AND ORDER
                                          )
JO ANNE B. BARNHART, Commissioner )
of Social Security,                       )
                                          )
                    Defendant.            )

        Tim Wilborn
        Wilborn & Associates, P.C.
        2020-C S. W. 8th Avenue, PMB #294
        West Linn, Oregon 97068-4612

                Attorney for Plaintiff

        Karin J. Immergut
        United States Attorney
        District of Oregon
        Neil J. Evans
        Assistant United States Attorney
        1000 S. W. Third Avenue, Suite 600
        Portland, Oregon 97204-2902

Page 1 - OPINION AND ORDER

David M. Blume
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Rudy Garcia brings this action pursuant to section 405(g) and 1383(c)(3) of the Social Security Act to obtain judicial review of a final decision of the Commissioner denying his application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## BACKGROUND

Garcia filed applications for DIB and SSI on August 8, 1997.  These applications were denied initially and upon reconsideration.  After a timely request for a hearing, Garcia, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ").

On May 27, 1999, the ALJ issued a decision finding that Garcia was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.  The decision was appealed to this court, but on January 29, 2003 when the claim file could not be located I remanded the case to reconstruct the file or hold a new hearing.  The file was subsequently located, prompting this court action.

Page 2 - OPINION AND ORDER

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of DIB  to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1).  In addition, under the Act, SSI may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant.  Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), cert. denied, 519 U.S. 881 (1996) (DIB); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI).  To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  20 C.F.R. §§ 404.1520 and 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (DIB); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI).  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and

determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI). The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

Page 4 - OPINION AND ORDER

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

## FACTS

I.    Garcia's History

Garcia, who was 39 years old at the time of the ALJ's decision, alleges he suffers from anxiety disorder, right wrist pain, and chronic low back pain. Plaintiff obtained his GED, and attended community college classes in 1998. He had past relevant work as a delivery driver, pantry cook, landscape laborer, customer service/dental lab, insurance sales representative, customer service/computer software, and waiter.

Plaintiff was in a car accident in January 1996 that caused a musculoskeletal strain of the lumbar and cervical spine, and wrist pain. He was treated in August 1997 for a right ganglion cyst.[1]

On November 4, 1997, Cheryl Brischetto, Ph.D., diagnosed plaintiff with anxiety disorder not otherwise specified, with a Global Assessment of Functioning (GAF) score of 60. She perceived a neatly dressed man who was on time for his appointment, and who reached out and shook her hand at the beginning and end of the appointment. He had a good vocabulary and spoke articulately. He "appeared able to follow multi-step commands." Tr. 281. His reasoning and judgment seemed adequate, although he identified feelings of paranoia as if people are against him. Dr. Brischetto described plaintiff's mood as mildly anxious, nevertheless, he was able to concentrate and focus on the task at hand. Testing showed his abilities to be average overall. Dr. Brischetto assigned a GAF score of 60.[2]

Glenn T. Brasington, Ph.D., evaluated plaintiff in January of 1998, diagnosing him with severe major depression, social phobia and adjustment disorder with mixed emotional features, and a GAF score of 45.[3] Plaintiff attended mental health therapy in 1998, and returned to Dr. Brasington in January of 1999. Dr. Brasington re-evaluated plaintiff, again diagnosing plaintiff

---

[1]A ganglion is defined to mean, "A small cystic tumor (as on the back of the wrist) containing viscid fluid and connected either with a joint membrane or tendon sheath." Merriam Webster's Medical Desk Dictionary 295 (1996).

[2]A score of 60 means that an individual has "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or coworkers)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV).

[3]A GAF score of 45 means that an individual has "any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." DSM-IV at 34.

with severe major depression, social phobia, and a GAF score of 45. Dr. Brasington noted that plaintiff spoke very articulately. Testing, however, showed he has a low to below average intelligence, and suffered from severe depression. Dr. Brasington did note that plaintiff's responses on one test "may be interpreted as an exaggeration of his problems." Tr. 291. Nevertheless, Dr. Brasington reported the results of the test because plaintiff presented a significant history of psychiatric problems. Dr. Brasington's most recent mental residual function capacity report, noted that plaintiff was markedly limited in his ability to perform activities within a schedule. He also opined that plaintiff was markedly limited in his ability to work without interruptions from his psychological symptoms and in his ability to interact with the public.

Plaintiff's brother, Robert Garcia, testified at the hearing before the ALJ that plaintiff is "very antisocial." Tr. 56. He described a handful of times when plaintiff did not behave appropriately in public.

II.    The ALJ's Decision

The ALJ found that plaintiff had physical and psychological impairments considered severe within the meaning of 20 C.F.R. § 404.1520(b), specifically anxiety disorder and a ganglion cyst. However, the ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ determined that plaintiff can lift and carry up to 25 pounds frequently and up to 50 pounds occasionally using primarily his left hand, can lift and carry up to 10 pounds frequently and up to 20 pounds occasionally using primarily his right hand, and can sit, stand,

and walk up to 6 hours each in an 8 hour workday.  The ALJ determined that plaintiff cannot

forcefully push or pull, climb ladders, ropes, or scaffolds, or crawl.  Due to psychological

impairments, the ALJ determined Garcia has a limited but satisfactory ability to relate to co-

workers and deal with the public and is seriously limited but not precluded from dealing with

stressful work.

Based on this residual functional capacity, and the testimony of the vocational expert

("VE"), the ALJ concluded that Garcia could perform his past relevant work as a telephone sales

representative, pastry cook, and waiter.  Accordingly, the ALJ found that plaintiff was not under

a "disability" within the meaning of the Social Security Act, at any time through his date last

insured.

## DISCUSSION

I.    <u>Medical Opinions</u>

Garcia argues that the ALJ improperly rejected the opinion of Dr. Brasington, and failed

to consider the importance of the GAF score.  The Commissioner responds that the ALJ properly

resolved conflicts in the evidence by citing to plaintiff's daily activities and other medical

evidence, and that the Commissioner finds GAF scores to be irrelevant for purposes of

determining disability.

The weight given to the opinion of a physician depends on whether the physician is a

treating physician, an examining physician, or a nonexamining physician.  <u>Lester v. Chater</u>, 81

F.3d at 830.  More weight is given to the opinion of a treating physician because the person has a

greater opportunity to know and observe the patient as an individual.  <u>Id.</u>; <u>Smolen v. Chater</u>, 80

F.3d 1273, 1285 (9th Cir. 1996).  If a treating or examining physician's opinion is not

contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830.

Both Dr. Brasington and Dr. Brischetto were plaintiff's examining physicians. The ALJ did not give as much weight to the findings of Dr. Brasington as he did the findings of Dr. Brischetto. Plaintiff complains that Dr. Brischetto did not assess plaintiff's limitations, whereas Dr. Brasington completed a mental residual functional capacity report in which he offered an opinion on plaintiff's limitations. It is true that Dr. Brischetto did not provide any conclusions on plaintiff's limitations. As such, the ALJ's reasons for rejecting Dr. Brasington's opinions must be clear and convincing.

The ALJ rejected Dr. Brasington's opinions to the extent he concluded that plaintiff was "seriously limited." Tr. 18. He found the doctor's conclusion to be "inconsistent with the treatment notes, the claimant's testimony, and the claimant's activities which demonstrate he was able to participate in group therapy, attend school, and perform his activities of daily living." Tr. 18. The ALJ noted that Dr. Brasington identified the fact that plaintiff was exaggerating his symptoms, yet seemed to give full credit to plaintiff's statements.

The ALJ provided clear and convincing reasons for rejecting the opinion of Dr. Brasington that plaintiff was seriously limited. Although plaintiff argues that Dr. Brasington recognized plaintiff's propensity to exaggerate in coming to his final conclusions about plaintiff's limitations, Dr. Brasington's summary is just the opposite. Dr. Brasington wrote,

His responses to the MMPI-II suggested he endorsed a wide range of psychiatric symptoms in a manner which may be interpreted as an exaggeration of his problems. In discussion of his response set he denied this. Since I was not able to confirm whether this is a valid test or not and he does present a significant history of psychiatric problems, the MMPI clinical scale results will be presented.

Tr. 291. Accordingly, the ALJ could properly conclude from this report that Dr. Brasington gave full credit to plaintiff's statements, despite his conflicting notes that plaintiff may be exaggerating.

The ALJ also summarized Dr. Brischetto's description of plaintiff as personable, someone who asked questions, who was able to follow multi-step directions, and could focus on the task at hand. The ALJ summarized plaintiff's report to Dr. Brischetto that plaintiff did chores at home, cooked, drove, and took computer classes. These daily activities undermine Dr. Brasington's conclusion that plaintiff is seriously limited, as the ALJ noted.

Plaintiff argues that attending group therapy and school is not evidence that plaintiff is capable of working full-time. I agree with plaintiff that attending group therapy, which is intended to be for the sole purpose of healing, is not indicative of plaintiff's ability to work. However, attending school is evidence that he is capable of working at a job with limited contact with the public and co-workers, as reflected in the ALJ's formulation of plaintiff's residual functional capacity. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). As a result, the ALJ gave clear and convincing reasons for rejecting Dr. Brasington's opinion that plaintiff is seriously limited, and these reasons are supported by substantial evidence.[4]

---

[4]In addition, plaintiff overstates the limitations found by Dr. Brasington. In the second, later evaluation of plaintiff, Dr. Brasington identified fewer areas where plaintiff was "markedly limited" or "moderately limited." Tr. 310.

Plaintiff finally argues that the ALJ improperly failed to consider the GAF scores

identified by Dr. Brasington.  However, for the reasons provided above, the ALJ provided clear

and convincing reasons supported by substantial evidence in the record for concluding that Dr.

Brasington's opinion of plaintiff's limitations was not entitled to much weight.  For that reason,

the ALJ did not err in declining to discuss the GAF scores, which is simply a way to sum up a

clinician's overall estimation as to the psychological, social and occupational functioning of a

patient.  Furthermore, a GAF of 45 is not automatically supportive of a finding of disability.  See

Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 598 (9th Cir. 1999) (court upheld

ALJ's decision that plaintiff was capable of working, despite depression, personality disorder and

a GAF as low as 45/55 and 49).

II.     Lay Witness Testimony

Plaintiff argues the ALJ improperly rejected the opinions of his Vocational Rehabilitation

Counselor, and the testimony provided by his brother.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must

take into account unless he gives reasons for the rejection that are germane to each witness.  A

medical diagnosis, however, is beyond the competence of lay witnesses.  Nguyen v. Chater, 100

F.3d 1462, 1467 (9th Cir. 1996).

The ALJ rejected the vocational counselor's opinions that plaintiff is unable to work due

to his suicidal ideation and isolation because the ALJ found these conclusions to be inconsistent

with plaintiff's therapist who found that plaintiff had no issues warranting therapy.  Plaintiff

argues that the ALJ's reasoning is irrational since plaintiff's ability to work involves different

considerations than plaintiff's ability to benefit from therapy.  However, the vocational

Page 11 - OPINION AND ORDER

counselor's opinion that plaintiff could not resume training or job placement was premised on

plaintiff's psychological status as being "severely debilitating with suicidal ideation&isolation."

Case Narrative, 90-Day Review, March 9, 1999.[5]  The ALJ gave a rational reason for rejecting

this evidence since plaintiff's therapist had opined not one month earlier that, "His issues don't

need therapy" and that plaintiff agreed with this assessment.[6]

      Plaintiff also challenges the ALJ's reasons for rejecting the lay witness testimony of his

brother, Robert J. Garcia.  The ALJ noted that Mr. Garcia testified as to a few events involving

plaintiff's loss of temper in public, but the incidents occurred many years ago.  The ALJ also

noted that Mr. Garcia suffers from schizophrenia and takes Haldol.

      I agree with plaintiff that Mr. Garcia's illness does not reflect on Mr. Garcia's honesty.  I

would not accept the ALJ's conclusion if this were the sole reason for the ALJ's rejection of Mr.

Garcia's testimony.  However, the ALJ properly considered that Mr. Garcia offered testimony

about only a few sporadic episodes from many years ago.  This is a sufficient reason to reject Mr.

Garcia's testimony.

IV.    Past Relevant Work

      In step four, the question is whether the claimant is capable of performing his past

relevant work.  This can be determined through the testimony of a vocational expert ("VE").

---

     [5]This report is attached to plaintiff's opening brief as it was not included in the record.
The government agrees that it should have been included in the record.

     [6]Unfortunately, plaintiff's therapist's notes from this date are also not included in the
record as the government was unsuccessful in reconstructing the record.  Plaintiff does not
dispute that the therapist made these statements.

Page 12 - OPINION AND ORDER

Hypothetical questions posed to a VE must specify all of the limitations and restrictions of the claimant.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

Garcia complains that the language used by the ALJ in forming the hypothetical question was confusing.  In addition, Garcia asserts that the ALJ should have considered Garcia's limitation in sustaining employment when questioning the VE.  Garcia also argues the residual functional capacity should have included a limitation on his ability to move his right wrist in a repetitive fashion.  Finally, Garcia contends that if the ALJ had credited the opinion of Dr. Brasington, the ALJ would have concluded that Garcia could not perform his past relevant work.

First, in posing the hypothetical question to the VE, the ALJ described plaintiff as having "a limited but satisfactory ability to relate to co-workers and deal with the public" and being "seriously limited but not precluded from dealing with stressful work."  Tr. 20.  Plaintiff argues these labels–"limited but satisfactory" and "seriously limited but not precluded"–are not typically used by the agency and the ALJ did not define the terms for the VE, and asserts that they are vague and meaningless.  Plaintiff also contends that "stressful work" was not defined, and in any event the ALJ should have identified the specific conditions that make work stressful for plaintiff in compliance with Social Security Ruling 85-15.  The Commissioner responds that the VE was able to understand the limitations and answer questions about which jobs would suit plaintiff's limitations.

I find that the ALJ's hypothetical was not improper.  The terms "limited but satisfactory" and "seriously limited but not precluded" have been used by the agency on forms it prepared.  See Schlappie v. Commissioner of Soc. Sec. Admin., No. CIV 98-1336-KI, 1999 WL 717364, * 3 (D. Or. Sept. 13, 1999) (describing mental residual functional capacity form published by

Social Security Administration). Indeed, "seriously limited but not precluded" has been used to define the term "fair" on medical assessments, see Edlund v. Massanari, 253 F.3d 1152, 1154, n.4 (9th Cir. 2001), and the terms have been used by other ALJs in forming residual functional capacities. Jondahl v. Apfel, No. CV-99-965-ST, 2000 WL 33200559 (D. Or. Nov. 8, 2000). There is no indication in the testimony that the VE was flummoxed by the ALJ's use of the terms, and from the VE's testimony it is clear he differentiated the terms from the word "marked," used later by the plaintiff's counsel in describing the hypothetical claimant's ability to take criticism from a supervisor. Tr. 76-77.

Plaintiff also asserts that the ALJ improperly asserted as a residual functional capacity factor plaintiff's limitation in doing "stressful work." Plaintiff relies on Social Security Ruling 85-15, which states that a claimant's reaction to stress is "highly individualized" and must be carefully evaluated, claiming that the ALJ failed to evaluate the triggers for plaintiff's stress. I find that the ALJ provided specific and individualized findings on plaintiff's limitations in working with co-workers and with the public, the factors that the record shows cause stress to plaintiff. Therefore, the residual functional capacity reflected plaintiff's limitations to the extent the ALJ found them supported by evidence in the record.

Plaintiff argues there is no evidence demonstrating that plaintiff is capable of working for any length of time, and sustaining employment. However, the ALJ relied on the VE's testimony that plaintiff's limitation in dealing with the public and co-workers–the factors that kept plaintiff from maintaining a job–could be accommodated in the jobs identified by the VE. Therefore, the ALJ properly concluded that plaintiff does not suffer from a condition that does not allow him to work on a regular basis.

Plaintiff also contends that the residual functional capacity should have included a limitation on plaintiff's ability to use his right wrist in a repetitive fashion.  However, the ALJ rejected plaintiff's testimony that he was limited in this fashion because,

> No treating or examining physician has opined that the claimant has any limitations due to his wrist problem.  At the hearing, the claimant testified his wrist is generally not painful, but he does have problems with repetitive manipulation.  The undersigned notes that his wrist pain has not prevented the claimant from taking computer classes, and he is not on prescription pain medication.

Tr. 16.  The ALJ may exclude from the RFC any limitations not supported by substantial evidence in the record.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) (VE's opinion has no value if the assumptions in the hypothetical are not supported by medical evidence in the record).

Finally, with regard to plaintiff's argument that the hypothetical question improperly excluded the limitations identified by Dr. Brasington, because I found that the ALJ properly disregarded Dr. Brasington's conclusions, the ALJ did not err in eliminating those limitations from the hypothetical.

The ALJ properly relied on the VE's testimony in determining that plaintiff could perform past relevant work.

///

///

Page 15 - OPINION AND ORDER

**CONCLUSION**

The decision of the Commissioner is affirmed.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____10th_____ day of March, 2006.


                            _____/s/ Garr M. King_____
                            Garr M. King
                            United States District Judge